Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Ryan Goldberg (RG 7570)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Company,*
*GEICO Indemnity Company, GEICO General Insurance Company*
*and GEICO Casualty Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY and                    Docket No.:_____ (       )
GEICO CASUALTY COMPANY,

                              Plaintiffs,
                                                                      **Plaintiff Demands a Trial by Jury**

               -against-

ROYAL MEDICAL IMAGING, P.C.,
JOHN SHERRY LYONS, M.D.,
MGRL INC.,
GARY MULLAKONDOV, and
JOHN DOE DEFENDANTS  1–10,

                              Defendants.
--------------------------------------------------------------X

## COMPLAINT

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO

General Insurance Company and GEICO Casualty Company (collectively "GEICO" or

"Plaintiffs"), as and for their Complaint against Defendants, hereby allege as follows:

### NATURE OF THE ACTION

1.      This action seeks to recover more than $148,000.00 that the Defendants

wrongfully obtained from GEICO as part of a fraudulent scheme involving the submission of

fraudulent insurance charges in the names of Royal Medical Imaging, P.C. ("Royal Medical") and John Lyons, M.D. ("Lyons") - a radiology professional corporation and its purported owner - that operated from 101-07 Jamaica Avenue, Richmond Hill ("Jamaica Ave Location") that were unlawfully owned and controlled by unlicensed laypersons.

2.      Defendants MGRL Inc. ("MGRL") and Gary Mullakondov ("Mullakondov") – along with others who are not presently identifiable  - including an individual believed to be related to Mullakondov named "Mark," none of whom are licensed medical professionals – devised a scheme to unlawfully own and control Royal Medical and the billing submitting under Lyons own Employer Identification Number ("EIN"), by essentially "buying" the license of Lyons by employing him as the sham owner of Royal Medical in order to do indirectly what they are forbidden from doing directly, namely controlling medical practices and siphoning the profits to themselves of Royal Medical and the profits from the billing submitted under Lyons EIN, through improper financial and kickback arrangements.

3.      Through their scheme, the Defendants submitted fraudulent bills to GEICO and other New York automobile insurance companies for professional radiology services, including magnetic resonance imaging tests ("MRIs" or "Radiology Services"), which allegedly were provided to New York automobile accident victims insured by GEICO ("Insureds") and other insurers.  In addition, Royal Medical improperly used independent contractors to perform the Radiology Services, all to exploit New York's no-fault insurance system for financial gain without regard to genuine patient care.

4.      By this action, GEICO seeks to recover the monies that have been wrongfully obtained by Defendants and, further, seeks a declaration that it is not legally obligated to pay

reimbursement of more than $564,000.00 in pending no-fault insurance claims that have been submitted by or on behalf of Royal Medical and Lyons because:

    (i)    Royal Medical and Lyons (through the billing submitted under his EIN) were unlawfully owned and controlled by non-medical professionals, and engaged in a scheme involving unlawful fee splitting with non-medical professionals, which renders them ineligible to bill for or to collect No-Fault benefits regardless whether the Radiology Services were medically necessary;

    (ii)    Royal Medical and Lyons have no right to receive payment for any pending bills submitted to GEICO because the Radiology Services failed to conform to the New York State Workers Compensation Fee Schedule and misrepresented the amount of reimbursement to which Defendants are entitled; and

    (iii)    Royal Medical and Lyons billed for Radiology Services that were provided by independent contractors, rather than by employees as required by the no-fault regulations.

5.    The Defendants fall into the following categories:

    (i)    Royal Medical is a New York radiology professional corporation through which the Radiology Services purportedly were performed and billed to automobile insurance companies, including GEICO;

    (ii)    Lyons is a physician licensed to practice medicine in the State of New York who falsely purports to own Royal Medical and submitted billing under his EIN; and

    (iii)    "Mark", Mullakondov, and John Doe Defendants 1–10 are non-licensed individuals who, individually and through entities they own and control, including MGRL (collectively "Management Defendants"), illegally own and control Royal Medical and the billing submitted through Lyons, engaged in a series of improper financial and kickback agreements and arrangements with Royal Medical and Lyons, and derive economic benefit from Royal Medical and Lyons in contravention of New York law.

6.    As discussed in more detail throughout this complaint, Defendants at all relevant times have known: (i) Royal Medical and Lyons were unlawfully owned and controlled by unlicensed laypersons; (ii) that Royal Medical and Lyons engaged in a scheme involving unlawful fee splitting with unlicensed laypersons, rendering them ineligible to recover No-Fault

benefits; (iii) Royal Medical and Lyons billing for Radiology Services failed to conform to the New York State Workers' Compensation Fee Schedule and misrepresented the amount of reimbursement to which they were entitled; and (iv) some of the Radiology Services were performed by independent contractors but fraudulently billed to GEICO as if they are performed by employees of Royal Medical and Lyons.

7.      As such, the Defendants do not now have – and never had – any right to be compensated for the services that have been billed to GEICO through Royal Medical or Lyons EIN.

8.      The charts annexed hereto as Exhibits "1" – "2" set forth a representative sample of the fraudulent claims that have been identified to-date that the Defendants have submitted, or caused to be submitted, to GEICO.

9.      The Defendants' fraudulent scheme began as early as 2019 and has continued uninterrupted through present day, as the Defendants continue to attempt to collect for the Radiology Services.  As a result of the Defendants' scheme, GEICO has incurred damages of more than $148,000.00.

## THE PARTIES

### I.      Plaintiffs

10.      Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in New York.

## II.    **Defendants**

11.    Defendant Royal Medical is a New York medical professional corporation with its principal place of business in New York. Royal Medical was incorporated on April 7, 2011 and is nominally owned on paper by Lyons, who ceded control to the Management Defendants in order to allow Royal Medical to render services at the Jamaica Ave Location.

12.    Defendant Lyons resides in and is a citizen of New Jersey. Lyons was licensed to practice medicine in New York on October 9, 1981 and purports to own Royal Medical.  Lyons also billed GEICO and other New York automobile insurers under his own EIN.

13.    Defendant Mullakondov resides in and is a citizen of New York. Mullakondov has never been a licensed medical professional, yet owned, controlled, and derived economic benefit from Royal Medical, and split fees with Royal Medical, in contravention of New York Law.

14.    Defendant MGRL is a New York corporation with its principal place of business at the Jamaica Ave Location. MGRL is not a licensed professional entity, and is owned and controlled by "Mark", Mullakondov, and John Doe Defendants 1–10, none of whom are licensed medical professionals, yet they owned, controlled, and derived economic benefit from Royal Medical, and split fees with Royal Medical, in contravention of New York Law.

15.    Upon information and belief, John Doe Defendants 1–10 reside in and are citizens of New York. John Doe Defendants 1–10 are individuals and entities, presently not identifiable to GEICO, who are not and have never been licensed medical professionals, yet – together with Mullakondov and MGRL – have owned, controlled, and derived economic benefit from Royal Medical and Lyons in contravention of New York Law, and have split fees with Royal Medical in contravention of New York Law.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

17.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

18.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

19.     GEICO underwrites automobile insurance in New York.

**I.      An Overview of the No-Fault Laws and Licensing Statutes**

20.     New York's no-fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the health care services that they need.  Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

21.     In New York, No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses that are incurred for healthcare goods and services, including radiology services, physician services, chiropractic services, physical therapy services, and acupuncture services.

22.     In New York, an Insured can assign his/her right to No-Fault Benefits to health care goods and services providers in exchange for those services. Pursuant to a duly executed assignment, a health care provider may submit claims directly to an insurance company and receive payment for medically necessary services, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or, more commonly, as an "NF-3"). In the alternative, in New York, a healthcare services provider may submit claims using the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

23.     Pursuant to the No-Fault Laws, professional corporations are not eligible to bill for or to collect No-Fault Benefits if they are unlawfully incorporated or fail to meet any New York State or local licensing requirements necessary to provide the underlying services.

24.     The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.16(a)(12) states, in pertinent part, as follows:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

(Emphasis added).

25.     In New York, only a licensed healthcare professional may: (i) practice the pertinent healthcare profession; (ii) own and control a professional corporation authorized to operate a professional healthcare practice; (iii) employ and supervise other healthcare professionals; and (iv) absent statutory exceptions not applicable in this case, derive economic benefit from healthcare professional services. Unlicensed individuals may not: (i) practice the pertinent healthcare profession; (ii) own or control a professional corporation authorized to operate a professional

healthcare practice; (iii) employ or supervise healthcare professionals; or (iv) absent statutory exceptions not applicable in this case, derive economic benefit from professional healthcare services.

26.     New York law prohibits licensed healthcare services providers from paying or accepting kickbacks in exchange for patient referrals. See, e.g., New York Education Law §§ 6509-a; 6530(18); and 6531.

27.     New York law also prohibits unlicensed persons not authorized to practice a profession, like radiology, from practicing the profession and from sharing in the fees for professional services.  See e.g., New York Education Law §6512, §6530 (11), and (19).

28.     Similarly, under New York Education Law § 6530(17) it is unlawful for a medical professional to exercise undue influence on a patient, including the promotion or the sale of goods or services in such a manner as to exploit the patient for financial gain of the medical professional or a third party.

29.     Therefore, under the No-Fault Laws, a healthcare provider is not eligible to receive No-Fault Benefits if it is fraudulently incorporated, fraudulently licensed, if it permits unlicensed non-professionals to control or dictate the treatments rendered or allows them to share in the fees for the professional services, or if it pays or receives unlawful kickbacks in exchange for patient referrals.

30.     In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals confirmed that healthcare services providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

31.     In <u>Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.</u>, 2019 N.Y. Slip Op. 04643 (June 11, 2019) the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of care delivered by a physician to a patient."

32.     Pursuant to the New York No-Fault Laws, only healthcare services providers in possession of a <u>direct</u> assignment of benefits are entitled to bill for and collect No-Fault Benefits. There is both a statutory and regulatory prohibition against payment of No-Fault Benefits to anyone other than the patient or his/her healthcare services provider. The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.11, states – in pertinent part – as follows:

> An insurer shall pay benefits for any element of loss … directly to the applicant or ... upon assignment by the applicant ... shall pay benefits <u>directly</u> to providers of healthcare services as covered under section five thousand one hundred two (a)(1) of the Insurance Law …

33.     Accordingly, for a healthcare services provider to be eligible to bill for and to collect charges from an insurer for healthcare services pursuant to New York Insurance Law § 5102(a), it must be the <u>actual</u> provider of the services. Under the New York no-fault insurance laws, a healthcare services provider is not eligible to bill for services, or to collect for those services from an insurer, where the services were rendered by persons who were not employees of the healthcare services provider, such as independent contractors.

34.     In New York, claims for No-Fault Benefits are governed by the New York Workers' Compensation Fee Schedule (the "Fee Schedule").

35.     When a healthcare services provider submits a claim for No-Fault Benefits using the current procedural terminology ("CPT") codes set forth in the Fee Schedule, it represents that: (i) the service described by the specific CPT code that is used was performed in a

competent manner in accordance with applicable laws and regulations; (ii) the service described by the specific CPT code that is used was reasonable and medically necessary; and (iii) the service and the attendant fee were not excessive.

36.     Pursuant to New York Insurance Law § 403, the NF-3s and HCFA-1500 Forms submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the health care provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## II.     The Defendants' Fraudulent Scheme

37.     Beginning in 2019, the Defendants masterminded and implemented a complex fraudulent scheme in which Lyons billing under his own EIN and Royal Medical – owned on paper by Lyons, but actually illegally owned and controlled by the Management Defendants – was used to bill GEICO and the New York automobile insurance industry for hundreds of thousands of dollars in no-fault insurance benefits they were never entitled to receive.

### A.     The Management Defendants' Control and Operation of the Jamaica Ave Location

38.     The Management Defendants, through a series of companies they have been associated with, have consistently maintained control of the Jamaica Avenue Location, purchased imaging equipment used at the location, hired and controlled administrative and other staff and technicians at the location, and operated and controlled a series of radiology professional corporations at the location over a number of years, including Royal Medical and the billing submitted by Lyons EIN.

39.     The Management Defendants maintained control over the medical practices and licensed individuals, including Lyons and Royal Medical, that provided radiological services through a series of financial and kickback agreements/arrangements with the various medical providers, that involved: (i) leasing of the physical space; (ii) leasing of the outdated imaging equipment (that is approximately twenty years old); (iii) the Management Defendants obtaining and causing the medical practices to utilize their referral sources for radiology prescriptions and outside vendors with relationships to the Management Defendants; (iv) causing the practices to enter into arrangements with billing companies tied to the Management Defendants; and (v) use of non-medical staff and technicians that operated from and controlled the day to day operations of the location.

40.     The radiology practices that have operated at the Jamaica Avenue Location over the years, including Royal Medical and Lyons, never marketed their "practices" to the general public, did not advertise for patients, and never sought to build name recognition to draw legitimate business or attract legitimate referral sources.

41.     The Management Defendants maintained a physical presence at the location, personally and through MGRL as well as their designated office manager Arami Lopez ("Lopez"), so they could control all of the day to day operations, while allowing individuals such as Lyons to not have to spend any significant time at the location.  In fact, Lopez has acted as the office manager at the Jamaica Avenue Location as a constant through the revolving door of radiology practices that have allegedly operated from the space.

42.     Additionally, to further control the location and minimize the amount of time Lyons needed to spend at the location, the Management Defendants caused radiologists such as Lyons to operate <u>via</u> tele-radiology and not perform any professional services on site.  This

allowed the Management Defendants to control the day to day operations of the Jamaica Ave Location through the administrative staff they employed and controlled and keep the nominal owners and radiologists from needing to be physically present at the location.

43.     In order to conceal their true ownership of the radiology practices, including Royal Medical and Lyons, and claim an air of legitimacy to the unlawful arrangements, the Management Defendants held themselves out to the public as being associated with radiology practices allegedly "operating" from the Jamaica Ave Location, including Royal Medical and Lyons.

44.     For example, Royal Medical posted an internet advertisement for a technician position that listed Mullakondov, not Lyons, as the contact for hiring, directing applicants to an email address RoyalMedicalImaging@gmail.com, indicating the Management Defendants had control of Royal Medical's email account.

45.     The Management Defendants caused the radiological practices at the Jamaica Avenue Location, including Royal Medical and Lyons, to utilize the same phone and fax numbers, which were tied to the Management Defendants and not the individual radiology practices.

46.     The Management Defendants caused all reading radiologists, including Lyons, to operate via tele-radiology and not perform any professional services at the Jamaica Avenue Location, to eliminate and/or minimize the amount of time any of the licensed radiologists would spend at the Jamaica Avenue Location.

47.     The Management Defendants' physical presence at the Jamaica Avenue Location, along with the absence of any physical presence by the licensed radiologists, allowed the Management Defendants to control the day to day operations of the Jamaica Avenue Location

through the administrative staff they employed and/or controlled, without any genuine involvement by the licensed radiologists, including Lyons.

48.     As part and parcel of the fraudulent scheme, the Management Defendants required Royal Medical, Lyons and radiology practices that operated at the Jamaica Ave Location to use the referral sources with whom the Management Defendants had arrangements and were not known to Lyons or any other radiologists.  Regardless of the named entity or nominal owner who operated from the location, the majority of the referral sources for the radiology referrals have remained the same.

49.     The record owners of the radiology practices that have operated at the Jamaica Ave Location, including Lyons, did nothing to create, maintain, or control the referral sources and the patient base for the radiology practices that operated at the Jamaica Ave Location.

50.     The Management Defendants required the radiology practices that operated at the Jamaica Ave Location, including Royal Medical and Lyons, to use the referral sources the Management Defendants had arrangements with.

51.     For example, the radiology practices at the Jamaica Ave Location have received a majority of their radiology referrals from medical providers that purportedly rendered services from the following no-fault clinic locations:

- 9205 Rockaway Boulevard, Jamaica, New York;

- 611 E. 76th Street, Brooklyn,  New York;

- 222-01 Hempstead Avenue, Jamaica, New York;

- 152-80 Rockaway Boulevard, Jamaica, New York.

52.     Despite changes in the medical providers at each of these no-fault clinics over the years and the radiology practices at the Jamaica Ave Location, the radiology referrals to the

Jamaica Ave radiology practices, including Royal Medical and Lyons, remained constant and continually originated from these no-fault clinics.

53.     In keeping with the fact that the Management Defendants controlled the Jamaica Ave Location, on multiple occasions Royal Medical submitted billing under a professional corporation that previously operated out of the Jamaica Ave Location – Rainbow Radiology, P.C.

54.     Once insurance companies began investigating a radiology practice at the Jamaica Ave Location, the Management Defendants would cause the practice to cease operating and simply recruit another medical professional, who they had worked with prior, to operate a radiological practice from the Jamaica Ave Location.

**B.      The Fraudulent Incorporation and Operation of Royal Medical and Lyons EIN**

55.     Lyons has purported to own at least six professional corporations, including Royal Medical.

56.     Royal Medical was incorporated in April, 2011.   Lyons testified at an Examination Under Oath ("EUO") that Royal Medical was incorporated for the purpose of performing no-fault musculoskeletal sonograms and that he found out about the potential for the radiology practice through a technician.   However, GEICO has never received billing for sonograms from Royal Medical and it was not until 2019 did Royal Medical begin billing GEICO.

57.     Thereafter, in 2019, the Management Defendants needed a licensed radiologist to operate from the Jamaica Ave Location, who would be willing to: (i) let them control a medical professional corporation under the radiologist's name; (ii) utilize the equipment, non-medical staff and office space at the Jamaica Ave Location; (iii) split fees with the companies associated

with the Defendants; (iv) continue using the referral sources that the Management Defendants had arrangements with; and (v) submit large-scale billing to GEICO and other insurers.

58.     The Management Defendants did not have to search far for a radiologist, as they knew Lyons was willing to engage in such a scheme and act as the nominal owner of Royal Medical.  For example, Lyons had agreed to allow his license to be used by laypersons in order to submit fraudulent billing to automobile insurers in the past.  See Allstate Insurance Company, et. al., v. David R. Payne, M.D., et al., E.D.N.Y. Case No. 18-cv-3972; Allstate Insurance Company, et. al., v. All County, LLC, et al., E.D.N.Y. Case No. 19-cv-7121.

59.     In order to circumvent New York law and to induce the New York State Education Department (the "Education Department") to continue authorizing Royal Medical to operate a medical practice, the Management Defendants entered into a secret scheme with Lyons.

60.     In exchange for compensation from the Management Defendants, Lyons agreed to falsely represent that he was the true shareholder, director, and officer of Royal Medical and that he truly owned and controlled the professional corporation.  Lyons did this knowing that Royal Medical was going to be used to submit fraudulent billing to automobile insurers, including GEICO.

61.     Once Royal Medical began operating from the Jamaica Ave Location (although potentially earlier in time), Lyons ceded true beneficial ownership and control over the professional corporation to the Management Defendants.

62.     The Management Defendants – rather than Lyons – provided all start-up costs and ongoing money to operate Royal Medical from the Jamaica Ave Location.

63.     The Management Defendants required Lyons and Royal Medical to enter into a series of agreements including for the use of the space, staff, outside vendor services and equipment.

64.     Specifically, the Management Defendants arranged to have Lyons and Royal Medical enter into an agreement involving "management", "marketing", "lease" of space, and "lease" of equipment in order to conceal their true ownership and control of Royal Medical. This agreement called for payment of $15,000.00 per month from Royal Medical to the Management Defendants, purportedly for leasing the Jamaica Ave Location, leasing the equipment at the Jamaica Ave Location, and for the performance of certain designated services including management and/or marketing, regardless of the actual value of the services provided and the fact that invoices do not specifically detail the services being provided by the Management Defendants.

65.     The Management Defendants also required Lyons and Royal Medical to enter into agreements with outside vendors, the identity of which were determined by the Management Defendants and based on terms negotiated by the Management Defendants.

66.     In fact, Lyons has acknowledged that: (i) he was introduced to "Mark and Gary" who he thought were businessmen and brothers who owned the Jamaica Avenue Location; (ii) "Mark and Gary" own the MRI machines, the office space and through a monthly fee and took care of  everything he needed to operate in this location; (iii) Lopez takes care of everything in the practice for him and handles and deposits checks; (iv) he is only physically present at the Jamaica Avenue Location 1-2 times a month; (v) Lopez began handling Royal Medical's billing (despite Lyons using other billing companies for his other professional corporations); (vi) the accountant used by Royal Medical, who determines payroll and other financial information was

16

related to the Management Defendants; (vii) the Management Defendants entered into various agreements with outside vendors on behalf of Royal Medical and (viii) Royal Medical transfers monthly payments to the Management Defendants but he did not know who set up the transfers.

67.     Lyons did not market Royal Medical's practice to the general public, did not advertise for patients, did not engage in efforts to attract referral sources, never sought to build name recognition to draw legitimate business, and did virtually nothing as would be expected of the owner of a legitimate radiology "practice" to develop its reputation and attract patients. In fact, Lyons was rarely, if ever, present at the Jamaica Ave Location.

68.     The Management Defendants, rather than Lyons, created and controlled the referral sources and the patient base for Royal Medical's practice.

69.     In keeping with the fact the referrals made to Royal Medical and Lyons were not based on any relationships/advertising/marketing performed by Lyons, Lyons own sworn testimony supports the conclusion that the referrals made to Lyons were not based on any relationships/advertising/marketing he performed on behalf of Royal Medical.  For example, Lyons has remarkably testified under oath that he did not want to know the names of the referring physicians and he did not recognize the names of various medical providers who referred patients to Royal Medical for radiology services, including Dr. Augustus Igbokwe, who referred more than 25% of the patients to Royal Medical for Radiology Services.  Additionally, Lyons has testified under oath that the referral sources are actually obtained by the Management Defendants through advertising, although he was unsure where they actually advertised.

70.     Lyons never selected or controlled who provided administrative, management, collection, reception, transportation, and/or other services for Royal Medical.  In fact, any

services provided by individuals and/or entities related to the Radiology Services and accompanying equipment were hired and paid for paid for by Management Defendants.

71.    Similarly, Lyons never controlled the amounts billed to, or paid by, Royal Medical for administrative, management, collection, reception, transportation, and/or other services provided for or on behalf of Royal Medical.

72.    Once Royal Medical began rendering services from the Jamaica Avenue Location, Lyons never was the true shareholder, director, or officer of Royal Medical, and never had any true ownership interest in or control over the professional corporation. True ownership and control over Royal Medical always rested entirely with the Management Defendants, who used the façade of Royal Medical to do indirectly what they were forbidden from doing directly, namely: (i) employ medical professionals; (ii) control the practices and (iii) charge for and derive an economic benefit from its services.

73.    In further support of that fact the Management Defendants – not Lyons – owned and controlled Royal Medical, Lyons' actions at Royal Medical were akin to those of an employee, and not of an owner. Specifically: (i) Lyons was the reading radiologist for Royal Medical; (ii) Lyons did not review the billing or medical documents created on behalf of Royal Medical as they contained numerous errors that a legitimate owner should have identified and rectified (such as identifying Lyons as board certified radiologist, when in fact, he is not); (iii) Lyons did not know the sources of the radiology referrals made to Royal Medical; (iv) Lyons provided the Management Defendants and the staff with a signature stamp that was used on all documents created by Royal Medical (that were submitted to GEICO); and (v) Lyons did not identify and rectify that on multiple occasions the services performed by Royal Medical were billed under Rainbow

Radiology, P.C. – another professional corporation which previously operated from the Jamaica Ave Location.

74.     Lyons exercised absolutely no control over or ownership interest in Royal Medical. All decision-making authority relating to the operation and management of Royal Medical was vested entirely with the Management Defendants.

75.     Lyons, at all relevant times, was at best a glorified employee of the Royal Medical, not receiving any profit sharing or other draw of monies from Royal Medical, but instead being paid for the "reads" he conducted on radiology film taken at Royal Medical by receiving a check from Royal Medical.

76.     In addition, Lyons never fully controlled or maintained any of Royal Medical's books or records, including its bank accounts; never selected, directed, and/or controlled any of the individuals or entities responsible for handling any aspect of Royal Medical's financial affairs; never hired or supervised any of Royal Medical's employees or independent contractors; and was completely unaware of fundamental aspects of how Royal Medical operated.

77.     As they had done with the other providers from the Jamaica Ave Location, the Management Defendants caused the administrative staff and technicians to work for Royal Medical so that they could control the day to day operations at the Jamaica Ave Location.

78.     The Management Defendants also arranged to have Royal Medical enter into various financial arrangements and agreement with themselves in order to conceal their true ownership and control of Royal Medical.

79.     While these agreements ostensibly were created to permit the Management Defendants to provide services, or facility space and equipment, they were actually used solely as a tool to permit the Management Defendants to: (i) control the day-to-day operations, exercise

19

supervisory authority over, and illegally own Royal Medical; and (ii) to siphon all of the profits that were generated by the billings submitted to GEICO and other insurers through Royal Medical.

80.     The net effect of the agreements and financial arrangements between the Defendants has been to maintain Royal Medical in a constant state of debt to the Management Defendants, thereby enabling the Management Defendants to maintain total control over the professional corporation, its accounts receivable, and any revenues that might be generated therefrom.

81.     The Management Defendants' unlawful ownership and control of Royal Medical compromised patient care, because the provision of health services through Royal Medical was entirely subject to the pecuniary interests of its non-medical professional owners, not the independent medical judgment of a true medical professional-owner.

82.     Shortly following Lyons provided sworn testimony during the EUO, the Defendants caused Royal Medical to cease billing for Radiology Services from the Jamaica Avenue Location.  Immediately thereafter, Lyons began billing for Radiology Services under his EIN.  Other than the change in name of entity, there were no substantive changes between Royal Medical and Lyons.  In fact, Lyons maintained all of the same agreement and arrangements with the Management Defendants, including the same administrative staff, use of Lopez as a manager, outside vendor services and direct payments to the Management Defendants.

83.     The non-medical professional Management Defendants' unlawful ownership and control of Royal Medical and Lyons compromised patient care, because the provision of health services through Royal Medical and Lyons was compromised and entirely subject to the

pecuniary interests of its non-medical professional owners, not the independent medical judgment of a true medical professional-owner.

### C.     The Defendants' Performance and Fraudulent Concealment of Excessive Billing for Radiology Services

84.     Because on the improper financial arrangements and costs associated with control, the Defendants had to maximize the charges they submitted to GEICO and other insurers.  To that end, the Defendants submitted large volumes of bills to GEICO, and other insurers, for Radiology Services that were directed by laypersons, who were not bound by the ethical rules governing the quality of care and the rules protecting against the exploitation of the patients for financial gain.

85.     The Management Defendants scheme included: (i) the performance of Radiology Services that were performed proximately to the insured's date of loss; (ii) the submission of bills for Radiology Services that did not comply with the New York Workers' Compensation Board Medical Treatment Guidelines; and (iii) the submission of the bills that violated Ground Rule 3 established by the Radiology Section of the Fee Schedule ("Ground Rules").

### i.     The Billing for Radiology Services in Violation of the Ground Rules

86.     The Fee Schedule establishes several Radiology Ground Rules that define the permissible scope of treatment and billing for radiology services:

A)     For two contiguous parts, the charge shall be the greater fee plus 50 percent of the lesser fee.

B)     For two remote parts, the charge shall be the greater fee plus 75 percent of the lesser fee. Bilateral procedures are considered remote parts.

C)     For three or more parts, whether contiguous or remote, the charge shall be the greatest fee plus 75 percent of the total of the lesser fees.

87.     Part and parcel of the Defendants' fraudulent scheme, the Defendants knowingly submitted billing under Royal Medical in violation of Ground Rule 3 in an attempt to maximize the profits of the professional corporation that they could siphon to themselves.

88.     For instance, when the Defendants purported to provide multiple Radiology Services on the same day, on the same Insured, they failed to apply the reduction in fees required by Ground Rule 3.

89.     For example:

(i)      Royal Medical billed GEICO for two Radiology Services purportedly provided to an Insured named V.M. on April 15, 2019. Royal Medical billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on V.M. on April 15, 2019, without reducing the lesser fee as required by Ground Rule 3.

(ii)     Royal Medical billed GEICO for two Radiology Services purportedly provided to an Insured named M.V. on April 22, 2019. Royal Medical billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on M.V. on April 22, 2019, without reducing the lesser fee as required by Ground Rule 3.

(iii)    Royal Medical billed GEICO for two Radiology Services purportedly provided to an Insured named R.V. on May 13, 2019. Royal Medical billed GEICO for cervical MRI and a lumbar MRI purportedly performed on R.V. on May 13, 2019, without reducing the lesser fee as required by Ground Rule 3.

(iv)     Royal Medical billed GEICO for two Radiology Services purportedly provided to an Insured named J.R. on June 19, 2019. Royal Medical billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on J.R. on June 19, 2019, without reducing the lesser fee as required by Ground Rule 3.

(v)      Royal Medical billed GEICO for two Radiology Services purportedly provided to an Insured named S.F. on June 20, 2019. Royal Medical billed GEICO for a cervical MRI and a thoracic MRI purportedly performed on S.F. on June 20, 2019, without reducing the lesser fee as required by Ground Rule 3.

(vi)     Lyons billed GEICO for two Radiology Services purportedly provided to an Insured named D.L. on November 12, 2019. Lyons billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on D.L. on

November 12, 2019, without reducing the lesser fee as required by Ground Rule 3.

(vii)   Lyons billed GEICO for two Radiology Services purportedly provided to an Insured named B.L. on November 20, 2019. Lyons billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on B.L. on November 20, 2019, without reducing the lesser fee as required by Ground Rule 3.

(viii)  Lyons billed GEICO for two Radiology Services purportedly provided to an Insured named F.S.H. on December 16, 2019. Lyons billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on F.S.H. on December 16, 2019, without reducing the lesser fee as required by Ground Rule 3.

(ix)    Lyons billed GEICO for two Radiology Services purportedly provided to an Insured named T.C. on January 16, 2020. Lyons billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on T.C. on January 16, 2020, without reducing the lesser fee as required by Ground Rule 3.

(x)     Lyons billed GEICO for two Radiology Services purportedly provided to an Insured named I.F. on February 6, 2020. Lyons billed GEICO for a cervical MRI and a lumbar MRI purportedly performed on I.F. on February 6, 2020, without reducing the lesser fee as required by Ground Rule 3.

90.    These are only representative examples. In virtually every case where two or more Radiology Services were purportedly performed on the same day, the Defendants failed to reduce the fees charged to GEICO and other insurers as required by Ground Rule 3.

91.    Further, Ground Rule 7 provides that:

When a patient is referred to radiologists or other specialists for services covered in the Radiology section, they shall evaluate the patient's problem and determine if the services or procedures are medically necessary. Such evaluation and necessary consultation with the referring physician is an integral part of the professional component relative value unit and does not merit any additional charges.

92.    When a patient was referred to Royal Medical or Lyons for radiology services, neither a physician from Royal Medical nor Lyons ever evaluated the patient's problem to determine if the services or procedures were medically necessary, and no consultation with the

referring healthcare provider was performed and no doctor from Royal Medical or Lyons was present to supervise the technicians that performed the MRIs all in violation of the Radiology Ground Rules.

93.     In fact, as Lyons testified, Lyons had other employment obligations, only the technicians and non-medical staff were ever present at the Jamaica Ave Road Location and he did not visit the Jamaica Ave Location with any regularity, if ever, and did not perform independent consultations or meaningfully oversee the technicians performing the services.

94.     Had Lyons been the legitimate owner of Royal Medical and not ceded ownership and control of Royal Medical or the billing under his EIN to the Management Defendants then Lyons would have been present at the Jamaica Ave Location on a frequent basis, would have provided genuine professional oversight of the radiology practices, and would have been in a position to either abide by or direct another physician to abide by the requirements of Section 7 of the rules established by the Radiology Section of the Fee Schedule.

**ii.     The Billing for Radiology Services in Violation of the Treatment Guidelines**

95.     In addition to violating the Ground Rules, the Defendants systemically billed in violation of the New York Workers' Compensation Board Medical Treatment Guidelines ("Treatment Guidelines").

96.     In December 2010, the New York State Workers' Compensation Board implemented a program of Treatment Guidelines. The program included four comprehensive, evidence-based guidelines for the treatment of injuries and illnesses involving the neck, back, shoulder and knee. These guidelines were the mandatory standard of care for dates of service on or after December 1, 2010 with updated versions of the Treatment Guidelines effective for dates of treatment on or after December 15, 2014.

97.     According to the Treatment Guidelines for the middle and lower back, MRIs are not recommended for acute back pain or acute radicular pain syndromes in the first 6 weeks, in the absence of red flags.  Nevertheless, Defendants routinely perform MRIs on Insureds within the first six weeks of the date of accident.

98.     For example:

(i)     On May 30, 2019 an Insured named T.D. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Royal Medical billed GEICO for a lumbar MRI purportedly performed on T.D. on June 18, 2019, which is less than 6 weeks after the date of accident.

(ii)    On July 10, 2019 an Insured named F.S. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Royal Medical billed GEICO for a lumbar MRI purportedly performed on F.S. on July 27, 2019, which is less than 6 weeks after the date of accident.

(iii)   On August 8, 2019 an Insured named J.V. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Royal Medical billed GEICO for a lumbar MRI purportedly performed on J.V. on August 21, 2019, which is less than 6 weeks after the date of accident.

(iv)    On September 2, 2019 an Insured named D.R. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Royal Medical billed GEICO for a lumbar MRI purportedly performed on D.R. on September 27, 2019, which is less than 6 weeks after the date of accident.

(v)     On September 9, 2019 an Insured named A.M.F. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Royal Medical billed GEICO for a lumbar MRI purportedly performed on A.M.F. on September 26, 2019, which is less than 6 weeks after the date of accident.

(vi)    On October 19, 2019 an Insured named S.C. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Lyons billed GEICO for a cervical MRI purportedly performed on S.C. on November 11, 2019, which is less than 6 weeks after the date of accident.

(vii)   On November 12, 2019 an Insured named M.B. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Lyons billed GEICO for a cervical MRI purportedly performed on M.B. on November 22, 2019, which is less than 6 weeks after the date of accident.

(viii)   On November 13, 2019 an Insured named L.D. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Lyons billed GEICO for a cervical MRI purportedly performed on L.D. on November 26, 2019, which is less than 6 weeks after the date of accident.

(ix)   On December 25, 2019 an Insured named L.C. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Lyons billed GEICO for lumbar and cervical MRIs purportedly performed on L.C. on January 9, 2020, which is less than 6 weeks after the date of accident.

(x)   On December 25, 2019 an Insured named J.R. was injured in a motor vehicle accident. Notwithstanding the Treatment Guidelines, Lyons billed GEICO for a cervical MRI purportedly performed on J.R. on January 15, 2020, which is less than 6 weeks after the date of accident.

99.   These are only representative examples. In fact, a majority of the bills submitted by the Defendants to GEICO for MRIs performed on Insureds were provided within the first 6 weeks of the Insureds' accidents.

100.   In keeping with the fact that the referrals were a product of improper financial relationships between the Defendants and individuals controlling the referring no-fault clinics and the radiology services were performed at the direction of the Management Defendants, Lyons testified at his EUO that while he believed there was some standard for the timing of the performance of MRIs after a motor vehicle accident, he was unsure of specific guidelines. Additionally, Lyons testified that there are benefits to waiting four to six weeks to do an MRI, including reduction of swelling.

101.   The submission of inflated billing by the Defendants, and Lyons' lack of involvement in evaluating whether the services provided were even medically necessary, demonstrates the services performed by Royal Medical were motivated by the improper financial arrangements and Management Defendants' control, which were designed to focus on maximizing profits.

102.    The Defendants' scheme not only unlawfully enriched the Defendants, but compromised patient care as Royal Medical and Lyons' operations were subject to pecuniary interests of the Management Defendants, not to the independent medical judgment of a true doctor-owner.

**D.      Fraudulent Billing for Services Provided by Independent Contractors**

103.    Defendants' fraudulent scheme also included submission of bills to GEICO seeking payment for services performed by independent contractors. Under the No-Fault Laws, professional corporations are ineligible to bill for or receive payment for goods or services provided by independent contractors – the healthcare services must be provided by the professional corporations, themselves, or by their employees.

104.    Since 2001, the New York State Insurance Department consistently has reaffirmed its longstanding position that professional corporations are not entitled to receive reimbursement under the No-Fault Laws for healthcare providers performing services as independent contractors. See DOI Opinion Letter, March 21, 2005 (DOI refused to modify its earlier opinions based upon interpretations of the Medicare statute issued by the CMS); DOI Opinion Letter, October 29, 2003 (extending the independent contractor rule to hospitals); DOI Opinion Letter, March 11, 2002 ("If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act…"); DOI Opinion Letter, February 21, 2001 ("where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services"); and   DOI Opinion

Letter, February 5, 2002 (refusing to modify position set forth in 2-21-01 Opinion letter despite a request from the New York State Medical Society). Copies of the relevant DOI Opinion letters are annexed hereto as Exhibit "3."

105.    Even so, the Defendants routinely submitted charges to GEICO through Royal Medical and Lyons for Radiology Services that allegedly have been provided – not by direct employees – but by independent contractors.

106.    The technicians and radiologists, other than the services performed Lyons, on behalf of Royal Medical and Lyons do not fit any of the traditional characteristics of "employment" in relation to the services they provide.  For example:

- the technicians reported to and were supervised by the Management Defendants, not Lyons;

- the technicians were unsupervised by Lyons in the performance of the professional services, used their own methods and exercised their independent judgment and skill in the performance of the Radiology Services; and

- the technicians were free to seek out all business opportunities associated with the performance of radiology services, including those that directly competed with Royal Medical in the healthcare marketplace.

107.    Further, upon information and belief, Royal Medical:

(i)      paid the technicians, either in whole or in part, on a 1099 basis rather than a W-2 basis;

(ii)     established an understanding with the technicians that they were independent contractors, rather than employees;

(iii)    paid no employee benefits to the technicians;

(iv)     failed to secure and maintain W-4 or I-9 forms for the technicians;

(v)      failed to withhold federal, state or city taxes on behalf of the technicians;

(vi)     compelled the technicians to pay any insurance they were required to maintain at their own expense;

(vii)  failed to cover the technicians for either unemployment or workers' compensation benefits; and

(viii)  filed corporate and payroll tax returns (e.g. Internal Revenue Service ("IRS") forms 1120 and 941) that represented to the IRS and to the New York State Department of Taxation that the technicians were independent contractors.

108.  By electing to treat the technicians and reading radiologists (other than Nominal Owners) as independent contractors, the Defendants realized significant economic benefits – for instance:

(i)  avoiding the obligation to collect and remit income tax as required by 26 U.S.C. § 3102;

(ii)  avoiding payment of the FUTA excise tax required by 26 U.S.C. § 3301 (6.2 percent of all income paid);

(iii)  avoiding payment of the FICA excise tax required by 26 U.S.C. § 3111 (7.65 percent of all income paid);

(iv)  avoiding payment of workers' compensation insurance as required by New York Workers' Compensation Law § 10;

(v)  avoiding the need to secure any insurance; and

(vi)  avoiding claims of agency-based liability arising from work performed by the technicians.

109.  Because the technicians were independent contractors and performed the Radiology Services – through Royal Medical – the Defendants never had any right to bill for or collect No-Fault Benefits in connection with those services.

110.  The Defendants billed for the Radiology Services through Royal Medical as if they were provided by actual employees of the professional corporation to make it appear as if the services were eligible for reimbursement. The Defendants' misrepresentations were consciously designed to mislead GEICO into believing that it was obligated to pay for these services, when in fact GEICO was not.

## III.   The Fraudulent Billing the Defendants Submitted or Caused to be Submitted to GEICO

111.   To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of NF-3 forms, HCFA-1500 forms, and/or treatment reports through Royal Medical and Lyons to GEICO seeking payment for the Radiology Services for which the Defendants were not entitled to receive payment.

112.   The NF-3 forms and treatment reports that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following material respects:

(i)     The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that Royal Medical was lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).  In fact, Royal Medical was not properly licensed in that it is a medical professional corporation that was unlawfully owned and controlled by, and split fees with, the Management Defendants, who are not licensed medical professionals.

(ii)    The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that the billing submitted under Lyons EIN was eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).  In fact, Lyons through the billing submitted under Lyons EIN was controlled by, and split fees with, the Management Defendants, who are not licensed medical professionals.

(iii)   The NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that Royal Medical and Lyons were in compliance with the New York State Workers Compensation Fee Schedule and misrepresented the amount of reimbursement to which Defendants were entitled, in order to inflate the bills.

(iv)    The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that Royal Medical and Lyons were lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).  In fact, Royal Medical and Lyons were not eligible to seek or pursue collection of No-Fault Benefits associated with the Radiology Services because the services in many cases were not provided by employees of Royal Medical or Lyons but rather were performed by independent contractors.

IV.     **The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

113.    The Defendants legally and ethically were obligated to act honestly and with integrity in connection with the billing that they submitted, or caused to be submitted, to GEICO.

114.    To induce GEICO to promptly pay the fraudulent charges for the Radiology Services, the Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment.

115.    Specifically, they knowingly misrepresented and concealed facts related to Royal Medical and Lyons in an effort to prevent discovery that Royal Medical was fraudulently incorporated and Royal Medical and Lyons unlawfully split fees with unlicensed persons.

116.    Additionally, the Defendants knowingly misrepresented and concealed facts to prevent GEICO from discovering that their charges failed to conform to the New York Workers Compensation Fee Schedule and were designed to maximize the charges submitted to GEICO and that the Radiology Services were performed in order to exploit the patients for financial gain.

117.    Once GEICO began to suspect that the Defendants were engaged in fraudulent billing and treatment activities, GEICO requested that they submit additional verification, including but not limited to, examinations under oath and requests for documents to determine whether the charges submitted through the Defendants were legitimate.  Nevertheless, in an attempt to conceal their fraud, the Defendants failed and/or refused to respond to all of GEICO's requests for verification of the charges submitted.

118.    GEICO maintains standard office practices and procedures that are designed to and do ensure that no-fault claim denial forms or requests for additional verification of no-fault claims are properly addressed and mailed in a timely manner in accordance with the No-Fault Laws.

119.     In accordance with the No-Fault Laws, and GEICO's standard office practices and procedures, GEICO either: (i) timely and appropriately denied the pending claims for No-Fault Benefits submitted through the Defendants; or (ii) timely issued requests for additional verification with respect to all of the pending claims for No-Fault Benefits submitted through the defendants (yet GEICO failed to obtain compliance with the requests for additional verification), and, therefore, GEICO's time to pay or deny the claims has not yet expired.

120.     The Defendants hired law firms to pursue collection of the fraudulent charges from GEICO and other insurers. These law firms routinely filed expensive and time-consuming litigation against GEICO and other insurers if the charges were not promptly paid in full.

121.     GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO incurred damages of more than $148,000.00 based upon the fraudulent charges.

122.     Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

### FIRST CAUSE OF ACTION
**Against Royal Medical and Lyons**
**(Declaratory Judgment, 28 U.S.C. §§ 2201 and 2202)**

123.     GEICO incorporates, as though fully set forth herein, each and every allegation set forth above.

124.     There is an actual case in controversy between GEICO and the Defendants regarding more than $564,000.00 in fraudulent billing for the Radiology Services that has been submitted to GEICO under the names of Royal Medical and Lyons.

125.     Royal Medical has no right to receive payment for any pending bills submitted to GEICO under the name of Royal Medical because Royal Medical was unlawfully incorporated, secretly and unlawfully owned and controlled by unlicensed individuals and entities, and unlawfully split fees with them.

126.     Lyons has no right to receive payment for any pending bills submitted to GEICO under his under EIN because Lyons was unlawfully secretly owned and controlled by unlicensed individuals and entities, and unlawfully split fees with them.

127.     Royal Medical and Lyons have no right to receive payment for any pending bills submitted to GEICO under the names of Royal Medical or Lyons because the bills misrepresented that Royal Medical and Lyons were in compliance with the New York State Workers Compensation Fee Schedule and misrepresented the amount of reimbursement to which Defendants were entitled, in order to inflate the bills.

128.     Royal Medical and Lyons have no right to receive payment for any pending bills submitted to GEICO under the names of Royal Medical and Lyons because the Radiology Services purportedly provided by Royal Medical  and Lyons – other than the services performed by Lyons – were performed by independent contractors and not employees.

129.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Defendants have no right to receive payment for any pending bills submitted to GEICO under the names of Royal Medical and Lyons.

<u>**SECOND CAUSE OF ACTION**</u>
**Against Royal Medical, Lyons, and the Management Defendants**
**(Common Law Fraud)**

130.     GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

131.    Royal Medical, Lyons, and the Management Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Radiology Services.

132.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Royal Medical was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by non-medical professionals, and engaged in a scheme involving illegal fee splitting with them; (ii) that Royal Medical was in compliance and conformed to the New York Workers Compensation Fee Schedule, when in fact, Royal Medical failed to conform to the New York Workers Compensation Fee Schedule and misrepresents the amount of reimbursement to which Royal Medical was entitled; (iii) in many claims, the representation that Royal Medical was eligible to receive direct payment of No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services allegedly performed, when in fact, Royal Medical was not eligible to seek or pursue collection of No-Fault Benefits associated with services allegedly performed because certain services were not provided by employees of Royal Medical.

133.    Royal Medical, Lyons, and the Management Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Royal Medical that were not compensable under the No-Fault Laws.

134.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $44,000.00 pursuant to the fraudulent bills submitted by the Defendants through Royal Medical.

135.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

136.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Against Royal Medical, Lyons, and the Management Defendants**
**(Unjust Enrichment)**

137.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

138.    As set forth above, Royal Medical, Lyons, and the Management Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

139.    When GEICO paid the bills and charges submitted by or on behalf of Royal Medical for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

140.    Royal Medical, Lyons, and the Management Defendants have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

141.    Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

142.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $44,000.00.

## FOURTH CAUSE OF ACTION
### Against Lyons and the Management Defendants
### (Common Law Fraud)

143.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

144.    Lyons and the Management Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Radiology Services.

145.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Lyons was eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the billing submitted under his EIN was unlawfully owned and controlled by non-medical professionals, and engaged in a scheme involving illegal fee splitting with them; (ii) that Lyons was in compliance and conformed to the New York Workers Compensation Fee Schedule, when in fact, Lyons failed to conform to the New York Workers Compensation Fee Schedule and misrepresents the amount of reimbursement to which Lyons was entitled; (iii) in many claims, the representation that Lyons was eligible to receive direct payment of No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services allegedly performed, when in fact, Lyons was not eligible to seek or pursue collection of No-Fault Benefits associated with services allegedly performed because certain services were not provided by employees of Lyons.

36

146.    Lyons, and the Management Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Lyons that were not compensable under the No-Fault Laws.

147.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $104,000.00 pursuant to the fraudulent bills submitted by the Defendants through Lyons.

148.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

149.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Against Lyons and the Management Defendants
### (Unjust Enrichment)

150.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

151.    As set forth above, Lyons and the Management Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

152.    When GEICO paid the bills and charges submitted by or on behalf of Lyons for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

153.    Lyons and the Management Defendants have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

154.    Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

155.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $104,000.00.

## JURY DEMAND

156.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.


**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.      On the First Cause of Action against Royal Medical and Lyons, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Royal Medical has no right to receive payment for any pending bills submitted to GEICO;

B.      On the Second Cause of Action against Royal Medical, Lyons and the Management Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $44,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

C.      On the Third Cause of Action against Royal Medical, Lyons and the Management Defendants, an amount to be determined at trial but in excess of $44,000.00, for unjust enrichment, plus costs and interest and such other and further relief as this Court deems just and proper;

D.      On the Fourth Cause of Action against Lyons and the Management Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of

$104,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E.      On the Fifth Cause of Action against Lyons and the Management Defendants, an amount to be determined at trial but in excess of $104,000.00, for unjust enrichment, plus costs and interest and such other and further relief as this Court deems just and proper.


Dated: July 7, 2020


                              RIVKIN RADLER LLP


                              By:   /s/   *Michael A. Sirignano, Esq.*
                                    Barry I. Levy (BL 2190)
                                    Michael A. Sirignano (MS 5263)
                                    Ryan Goldberg (RG 7570)
                              926 RXR Plaza
                              Uniondale, New York 11556
                              (516) 357-3000

                              *Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*